DENNIS, Circuit Judge,
dissenting.
Under the Louisiana Products Liability Act (LPLA), “[t]he manufacturer of a product shall be liable to a claimant for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product by the claimant or another person or entity.” 9 La. Rev.Stat. § 2800.54(A) (emphasis added). The district court granted summary judgment for Cintas, finding that there was no genuine dispute as to the material fact that Donald Spears’ conflagration did not arise from a reasonably anticipated use of the Cintas uniform because Spears’ use of gasoline vapors to start an air-locked Detroit diesel engine while wearing the uniform was obviously dangerous and, therefore, this use of the Cintas uniform was not reasonably anticipatable. The only issue in this appeal is whether the district court was correct that there was no genuine dispute as to that material fact. The majority agrees that there was no such dispute and affirms. I disagree and respectfully dissent.
Donald Spears, in opposition to summary judgment, introduced deposition testimony by himself and a number of his coworkers, that his use of gasoline vapors to start the Detroit diesel engine was a common practice and was not considered dangerous. Donald Spears also testified that he believed that it was safe to use gasoline vapors to start the Detroit diesel, because of its characteristics differing from that of other types of diesel engines.[1] *672 He admitted that he had seen other types of diesel engines backfire and explode, but said he had never seen or heard of a Detroit diesel doing so. Further, Donald Spears testified and submitted an affidavit that he had safely used gasoline vapors to start Detroit diesel engines countless times in the past. Likewise, Joey Williams, Apeck’s president, testified that he had heard that using gasoline vapors was “the common practice” before ether was available. It is undisputed that ether was not available to Donald Spears when he attempted to start the Detroit diesel motor with gasoline vapors. Charles Car-hee, an Apeck mechanic; Ronald Spears, another Apeck mechanic; and Charles Williams, Apeck’s former president, all testified that they had personally used gasoline vapors to start diesel engines, although not while working at Apeck. Car-hee testified that he had used gasoline vapors for this purpose and never had a problem doing so. Carhee also testified that “[m]ost mechanics shops” use gasoline vapors if ether starting fluid is not available and that he had seen it done “in many mechanics shops.” Although disagreeing with Donald Spears in other respects, Monty Orme, Apeek’s safety coordinator, and Ronald Spears testified that they had never seen or heard of a Detroit diesel engine backfiring as it did in this case. Further, Apeck president Joey Williams; Stacy Williams, Apeck’s vice president; and Apeck mechanic Ronald Spears all testified that they had never seen or heard of any diesel engine backfiring as it did in this case.
The foregoing evidence controverted the deposition testimony of several Apeck officers and employees that gasoline vapors were not used at Apeck to start air-locked diesel engines; that it was common practice instead to use ether-based starting fluids; and that ether was safer to use than gasoline. Moreover, Donald Spears’ other countervailing evidence tended to rebut their testimony: He testified that ether is not safer because it is “a higher octane, so, therefore, it’s more highly explosive”; that using gasoline vapors is safer for the person trying to start the engine; and that his personal preference was to use gasoline vapors. Similarly, Apeck mechanic Charles Carhee testified that he had personally used gasoline vapors and had never had a problem doing so. He also testified that: “Apparently there wasn’t” a problem with Spears’ using gasoline vapors; that it was a “common practice”; that he did not “see anything wrong with” it; and that while he used gasoline vapors on his own equipment, he would not use it on “other people’s equipment ... because of concern of damage to the engine, ... [n]ot because of any concern for safety as opposed to ether versus” gasoline. Likewise, Apeck mechanic Ronald Spears testified that he had personally used gasoline vapors and had “routinely seen people do that throughout [his] life”; and while he testified that he would now choose to use ether, in part because “gas gets too expensive,” he testified that he did not think that Donald Spears had failed to act in a safe and prudent manner at the time of his accident. Apeck vice president Stacy Williams testified that he did not know whether gas or ether was more dangerous, and that he did not know why, at Apeck, ether was used instead of gas; and when asked “if it was a safety issue or some other basis,” he responded, “No. It’s just ether has always been around, that’s what I always knew, that everybody started with ether.” Williams also testified that he did not know if using gasoline vapors was dangerous, and that Apeck did not have a rule against it. (Apeck safety coordinator Monty Orme similarly testified that Apeck did not have a procedure, written or otherwise, about how to start diesel engines.) Finally, Stacy Williams testified that at the time of the accident, he *673 “wouldn’t have been alarmed if somebody was using a gas rag to attempt to start a diesel in this manner”; that Spears “was doing what was normal to start a diesel engine before ether came out”; and when asked if he thought “Donald Spears failed to take reasonable steps to protect himself from harm,” Williams responded, “I don’t think he could have done anything else being as he’s done it thousands of times.”
Viewing the evidence in the light most favorable to the non-moving party, it is clear that the record evidence would allow a reasonable juror to find or infer that Donald Spears was wearing a Cintas’ uniform while performing a common mechanical task that did not present an obvious risk of flammability, and which was not an obviously dangerous use of the Cintas uniform, and as such, was a reasonably anticipated use of the Cintas uniform. Thus, Cintas has not met its burden to demonstrate a crucial requisite to its entitlement to summary judgment, viz., that there is no genuine dispute as to the material fact that Donald Spears’ accident arose from an obviously dangerous use of the Cintas uniform; or, that it did not arise from a reasonably anticipated use of the Cintas uniform. See Fed.R.Civ.P. 56(a) (2010); 9 La.Rev.Stat. § 2800.54(A); Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir.1994). Consequently, Cintas is not entitled to summary judgment on this record because it failed to show that there was no genuine dispute as to this material issue of fact. Accordingly, the majority has fallen into error in not reversing the judgment of the district court and in not remanding the case to it for further proceedings.

. Spears testified in his deposition about several attributes of the Detroit diesel engine that made him believe that "it was highly impossible” for the engine to backfire, and hence, that he had "never heard of any Detroit engine backfiring.” Diesel engines, Spears explained, "run[] on combustion instead of a spark like spark plugs.” (R. at 214). He testified that the Detroit engine only has two-cylinders, whereas another type of diesel engine "is a four-cylinder engine, and it has exhaust valves.” Additionally, Spears said that the Detroit engine "has another blower that sits on top of the engine that forces the air in.... I would never believe that the backfire would have made it all the way through that blower situation because it is a high-volume velocity blower plowing toward the engine ... and away from” the top of the engine where ether or gasoline vapors is introduced to start the engine. And because the blower is "mechanically driven!,] ... when you start to turn [the engine] over, ... [the blower] is turning at that time.” (R. at 342).